**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Jaime A., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 23 C 50005 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Martin O'Malley, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jamie A. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his application for disability insurance benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**BACKGROUND**

On January 27, 2021, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of July 25, 2020, because of bilateral shoulder tears, bilateral hand issues, bilateral knee issues, diabetes, and left elbow pain. R. 100; R. 167; R. 69. His claim was denied initially on April 26, 2021, and upon reconsideration on August 17, 2021. R. 15. A hearing was held before an administrative law judge (ALJ) on March 24, 2022. R. 33. The ALJ issued a written decision on May 18, 2022, finding that Plaintiff was not disabled under the applicable sections of the Social Security Act, and thus, not entitled to benefits. R. 15-24. The ALJ found that Plaintiff

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 7.

had the following severe impairments: rotator cuff tears and patellofemoral pain syndrome of the right knee. R. 17. The ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to:

> perform a range of light work as defined in 20 CFR 404.1567(b). The claimant is able to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently. He is able to stand or walk six hours out of an eight-hour workday and he is able to sit six hours out of an eight-hour workday. He is able to climb stairs, ramps, ladders, ropes, or scaffolds occasionally. He is able to balance, stoop, kneel, crouch or crawl occasionally. He is able to reach in all directions occasionally bilaterally.

R. 18. The ALJ determined that Plaintiff was unable to perform any past relevant work, but through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. R. 20. After the Appeals Council denied Plaintiff's request for review on November 9, 2022, Plaintiff filed this instant action. R. 1; Dkt. 1.

Prior to his alleged onset date, Plaintiff was receiving treatment for ongoing shoulder and knee pain. Regarding Plaintiff's knee pain, in December 2018, Plaintiff received an MRI of his right knee, which showed "grade 3 chondromalacia of the patella" and "mild chondromalacia of the medial lateral compartments." R. 296. In April 2020, Plaintiff sought evaluation from his primary care physician for right knee pain, which he reported had been present for over a year and was worsening. R. 384. In January 2021, Plaintiff again presented to his treating physician "to discuss his chronic, progressively worsening bilateral knee pains, right worse than left." R. 300. He received an injection in his right knee on January 22, 2021. R. 456. During a follow-up appointment four months later, in May 2021, Plaintiff stated that the injection had helped his knee pain initially, but that his knee pain had been worsening for about a month. R. 456. Plaintiff

reported during this appointment that, although his knee pain was "2-3/10 intensity on average," he had "noticed progressively worsened tolerance of kneeling and bending and squatting, with pains attempting to stand back up and intense stabbing pain with kneeling." R. 456. He received another injection in his right knee and was instructed to return to his physician if his symptoms worsened or failed to improve. R. 459. In March 2022, Plaintiff underwent an MRI of his right knee to compare against his 2018 MRI. R. 465. The 2022 MRI showed "changes of grade 3 chondromalacia patella" and "mild prepatellar soft tissue edema with additional suprapatellar joint effusion." R. 465.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

**DISCUSSION**

Plaintiff argues that the ALJ erred with respect to her evaluation of both Plaintiff's upper and lower extremities. Most compelling is Plaintiff's argument that the ALJ erred by failing to submit his most recent MRI of his right knee for medical review, and thus, the Court limits its analysis to this argument.

The medical record indicates that Plaintiff received an MRI of his right knee in December 2018. R. 299. In April 2021, state agency physician Dr. Kenney considered Plaintiff's medical records, including the 2018 MRI, and rendered an opinion that Plaintiff was capable of performing light work. R. 56-68. In August 2021, upon reconsideration, state agency physician Dr. LaFata also considered Plaintiff's medical records, which included the 2018 MRI, and rendered an opinion that Plaintiff was capable of performing light work. R. 71-76. After Dr. LaFata rendered his opinion, Plaintiff received another MRI for his right knee on March 9, 2022. R. 465. The ALJ held a hearing on March 14, 2022. R. 33. Plaintiff submitted the 2022 MRI for consideration on March 23, 2022. R. 275. The ALJ then rendered an opinion on May 18, 2022. R. 15-24.

In discussing Plaintiff's right knee impairment, the ALJ summarized the medical evidence as follows:

> With regard to the claimant's knee, his MRI back in 2018 revealed evidence of grade 2 or 3 chondromalacia with fissuring. (Exhibit 5F at p. 1) More recently, the claimant had minimal tenderness on examination. (Exhibit 4F at p. 14) He had mild crepitus and pain with flexion. (Exhibit 4F at p. 15). His patellar grind test was positive. His lower extremity strength, reflex and sensation was intact. (Exhibit 2F at p. 16) He received a steroid injection to treat his right knee pain. (Exhibit 4F at p. 16).

R. 19. Ultimately, the ALJ adopted the state agency physicians' recommendation of light work with occasional postural activities. R. 18; R. 62-67, 73-76.

Plaintiff argues that the ALJ did not properly evaluate the evidence and played doctor by rendering an RFC determination without submitting the March 2022 MRI to the state agency doctors for review. Dkt. 17 at 12-13. In response, the Commissioner maintains that substantial evidence supported the ALJ's RFC determination, because the ALJ reasonably relied on the state agency physicians' opinions and supported her analysis with citations to Plaintiff's medical records. Dkt. 24 at 7-8. Specifically, the Commissioner argues that the ALJ "was not able to discuss" the March 2022 MRI findings because Plaintiff "represented that the record was complete in March 2022," and that Plaintiff failed to carry his burden of proving that the 2022 MRI results "changed the picture of his functioning." Dkt. 24 at 9.

The Court rejects the Commissioner's contention that the ALJ "was not able to discuss" the March 2022 MRI findings because Plaintiff "represented that the record was complete in March 2022." During the hearing on March 14, 2022, Plaintiff indicated to the ALJ that he was waiting on additional records to be received, and the ALJ stated that she would hold the record open for 30 days to allow time to receive additional records. R. 38. Plaintiff submitted the 2022 MRI report to the ALJ on March 23, 2022, and requested that the record be considered complete at that time. R. 275; *see also* R. 24 (noting that the letter from Plaintiff and the 2022 MRI report were received subsequent to the hearing). Moreover, while the ALJ refers to the 2018 MRI in her opinion, her citation is to the 2022 MRI. R. 19. The ALJ does not otherwise reference or discuss the 2022 MRI findings. But whether by accident or purposeful disregard, the ALJ's lack of discussion regarding the 2022 MRI was not the result of Plaintiff misrepresenting that the record was complete or Plaintiff's failure to submit evidence in support of his disability claim.

Next, the Commissioner argues that the March 2022 MRI did not render the state agency physicians' opinions outdated, and that Plaintiff does not show how the March 2022 MRI "changed

the picture" of his functioning. Dkt. 24 at 8-9. In support of this argument, the Commissioner states that the 2022 MRI is "nearly identical" to the 2018 MRI. This argument runs afoul of the *Chenery* doctrine, which "confines a reviewing court to the agency's actual rationale for its decision, not an after-the-fact justification." *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012). Here, as discussed, the ALJ's opinion is devoid of any discussion regarding the March 2022 MRI. Thus, the argument that the 2022 MRI was "nearly identical" to the 2018 MRI is an *ad hoc* justification that the Commissioner may not introduce on appeal. *E.g.*, *Kastner*, 697 F.3d at 648.

But, even if the ALJ had supported her rationale by concluding that the 2022 MRI was "nearly identical" to the 2018 MRI, that decision would not have been supported by substantial evidence, because the MRI findings are not "nearly identical," and thus could have changed the picture of Plaintiff's functioning. The Seventh Circuit has repeatedly emphasized that an ALJ "may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). The Seventh Circuit has also criticized ALJ's for interpreting "new and potentially decisive medical evidence" without submitting such evidence to medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). MRI reports are exactly the type of medical evidence that an ALJ should submit to medical scrutiny, rather than interpreting on his own. *E.g.*, *Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022) (stating that the Seventh Circuit has "repeatedly…criticized ALJs for interpreting the results of an MRI and using that interpretation as a basis for denying benefits"); *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) (stating that, "without an expert opinion interpreting the MRI results in the record," an ALJ

was "not qualified to make his own determination" as to whether an MRI was consistent with a claimant's complaints).

Here, the 2022 MRI appears to show several changes since the 2018 MRI, and it would have been an error for the ALJ to opine on those results without having the 2022 MRI findings submitted to medical scrutiny. *E.g.*, *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (holding that the ALJ "was not qualified to assess on his own how the [claimant's] MRI results related to other evidence in the record"). The first finding in the conclusion section of the 2022 MRI report is "changes of grade 3 chondromalacia patella." R. 465. Without medical scrutiny, it is difficult to determine how a conclusion could be made that these "changes" are insignificant. An additional conclusion in the 2022 MRI report was "mild prepatellar soft tissue edema with additional suprapatellar joint effusion." R. 465. Both of these changes were absent on the 2018 MRI. R. 299; R. 465. Plaintiff testified that his pain was worsening since his 2018 MRI, and he reported to his treating physician that he was having severe pain with kneeling, squatting, bending and attempting to stand back up. R. 46-48; R. 456. The "changes of grade 3 chondromalacia patella" noted in the 2022 MRI report may well be consistent with those complaints of pain, and may have altered the state agencies suggested RFC restrictions regarding those activities. There were also new findings of prepatellar soft tissue edema with additional suprapatellar joint effusion. R. 465. These new findings may also have been significant enough to change the state agency physician's RFC recommendations, given that these physicians specifically pointed to a lack of swelling in Plaintiff's lower extremities as support for their RFC recommendation. R. 64; R. 74. The state agency doctors had no knowledge of the changes documented in the 2022 MRI, and thus, no opportunity to consider whether Plaintiff would need additional RFC limitations based on those changes. When an ALJ fails to submit this kind of new, significant evidence to medical scrutiny,

the ALJ's reliance on a state agency physician's stale opinion is reversible error. *E.g.*, *Brian M. v. Kijakazi*, No. 22 C 191, 2023 WL 5852193, at *6 (N.D. Ill. Sept. 11, 2023) (concluding that an ALJ erred by interpreting a plaintiff's MRI without submitting it to medical scrutiny, because the MRI showed changes that provided greater support to the claimant's allegation of pain and limitations than did the ALJ); *Sofia W. v. Kijakazi*, No. 21 C 50461, 2023 WL 2333303, at *7-8 (N.D. Ill. Mar. 2, 2023) (concluding same).

In light of this Court's remand, it will not address Plaintiff's remaining arguments. However, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: February 08, 2024      By: _____
                                  Lisa A. Jensen
                                  United States Magistrate Judge